THOMAS E. FRANKOVICH (State Bar No. 074414)
THOMAS E. FRANKOVICH,
*A PROFESSIONAL LAW CORPORATION*
1832-A Capitol Street
Vallejo, CA 94590
Telephone:    (415) 444-5800
Facsimile:    (415) 674-9900
Email:        tfrankovich@disabilitieslaw.com

Attorney for Plaintiff
BYRON CHAPMAN,

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON CHAPMAN,<br><br>    Plaintiff,<br><br>v.<br><br>NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company,<br><br>    Defendants.<br>_____ | **CASE NO.**<br>**Civil Rights**<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:**<br><br>**1st CAUSE OF ACTION:** For Denial of Access by a Public Accommodation in Violation of the Americans with Disabilities Act of 1990 (42 U.S.C. §12101, *et seq.*)<br><br>**2nd CAUSE OF ACTION:** For Denial of Full and Equal Access in Violation of California Civil Code §§54, 54.1 and 54.3<br><br>**3rd CAUSE OF ACTION:** For Denial of Accessible Sanitary Facilities in Violation of California Health & Safety Code §19955, *et seq.*<br><br>**4th CAUSE OF ACTION:** For Denial of Access to Full and Equal Accommodations, Advantages, Facilities, Privileges and/or Services in Violation of California Civil Code §51, *et seq.* (The Unruh Civil Rights Act)<br><br>**DEMAND FOR JURY** |

1      Plaintiff BYRON CHAPMAN, complains of defendants NARA INVESTMENTS, INC. a

2  California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a

3  California Limited Liability Company and alleges as follows:

4  **INTRODUCTION:**

5      1.    This is a civil rights action for discrimination against persons with physical

6  disabilities, of which class plaintiff BYRON CHAPMAN and the disability community are

7  members, for failure to remove architectural barriers structural in nature at defendants'

8  QUALITY INN & SUITES, a place of public accommodation, thereby discriminatorily denying

9  plaintiff and the class of other similarly situated persons with physical disabilities access to, the

10  full and equal enjoyment of, opportunity to participate in, and benefit from, the goods, facilities,

11  services, and accommodations thereof.  Plaintiff seeks injunctive relief and damages pursuant to

12  the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*; California Civil Code

13  §§51, 51.5 and 54, *et seq.*; and California Health & Safety Code §19955, *et seq.*

14      2.    Plaintiff brings this action acting as a "private attorney general" privatizing

15  enforcement of the American with Disabilities Act of 1990 ("ADA") without the American tax

16  payer(s) bearing the financial tax burden for such action.

17      3.    Plaintiff BYRON CHAPMAN is a person with physical disabilities who, on or

18  about November 8, 2014 through November 10, 2014 and July 6, 2015 through July 9, 2015

19  (and deterred thereafter), was an invitee, guest, patron, customer at defendants' QUALITY INN

20  & SUITES, in the City of Anaheim, California.  At said time(s) and place, defendants failed to

21  provide proper legal access to the QUALITY INN & SUITES, which is a "public

22  accommodation" and/or a "public facility" including, but not limited to signage, parking,

23  registration office, lobby unisex restroom, pool area, and guest room(s). The denial of access was

24  in violation of both federal and California legal requirements, and plaintiff  BYRON

25  CHAPMAN suffered violation of his civil rights to full and equal access, and was embarrassed

26  and humiliated.

27  //

28  //

**JURISDICTION AND VENUE:**

4.     **Jurisdiction:**   This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.* Pursuant to pendant jurisdiction, attendant and related causes of action, arising from the same nucleus of operative facts and arising out of the same transactions, are also brought under parallel California law, whose goals are closely tied with the ADA, including but not limited to violations of California Civil Code §51, *et seq.* and §54, *et seq.*, California Health & Safety Code §19955 *et seq.*, including §19959; and California Building Code.

5.     **Venue:**   Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is founded on the facts that the real property which is subject of this action is located at/near 871 S. Harbor Ave, in the City of Anaheim, County of Orange, State of California, and that plaintiff's causes of action arose in this county.

**PARTIES:**

6.     Plaintiff BYRON CHAPMAN is a "physically handicapped person," a "physically disabled person," and a "person with physical disabilities" (hereinafter the terms "physically disabled," "physically handicapped" and "person with physical disabilities" are used interchangeably, as these words have similar or identical common usage and legal meaning, but the legislative scheme in Part 5.5 of the Health & Safety Code uses the term "physically handicapped persons" and the Unruh Civil Rights Act, §§51, 51.5, 54 and 54.1, and other statutory measures refer to protection of the rights of "physically disabled persons"). Plaintiff BYRON CHAPMAN is a "person with physical disabilities," as defined by all applicable California and United States laws. Plaintiff BYRON CHAPMAN has a spinal cord injury which affects both lower extremities (i.e., right leg has no motor skills but heightened sensitivity and left leg has approximately 15% to 20% motor skills and no sensitivity). Plaintiff BYRON CHAPMAN requires the use of a wheelchair to travel about in public. Consequently, plaintiff BYRON CHAPMAN is a member of that portion of the public whose rights are protected by the provisions of Health & Safety Code §19955, *et seq.* (entitled "Access to Public Accommodations by Physically Handicapped Persons") and the protections of the Unruh Civil Rights Act, Civil

Code §§51 and 51.5 the Disabled Persons Act, Civil Code §54, and the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*

7.     **DEFINITIONS:**

a.     **ADAAG** - The Americans with Disabilities Act Accessibility Guidelines of 1990; and 2010 ADA Standards—

b.     **2010 ADA STANDARDS** - The revised regulations for Title II and III of the Americans with Disabilities Act of 1990 in the Federal Register as of September 15, 2010;

c.     **ARCHITECTURAL BARRIERS -** Architectural barriers are physical features that limit or prevent people with disabilities from obtaining the goods or services that are offered.  They can include but are not limited to the following examples:  parking spaces that are too narrow to accommodate people who use wheelchairs; a step or steps at the entrance or to part of the selling space of a store; round doorknobs or door hardware that is difficult to grasp; aisles that are too narrow for a person using a wheelchair; electric scooter, or a walker; a high counter or narrow checkout aisles at a cash register, and fixed tables in eating areas that are too low to accommodate a person using a wheelchair or that have fixed seats that prevent a person using a wheelchair from pulling under the table.

Excerpted from the *"ADA Guide for Small Businesses"* with an interlineation modification. http://www.ada.gov/smbustxt.htm.

(The descriptive use of the word "barriers" as used herein is synonymous with architectural barriers).

d.     **ELEMENTS -** An architectural or mechanical component of a building, facility, space, or site (e.g., telephone, curb ramp, door, flush valve, drinking fountain, seating, or water closet, toilet seat, dispensers) and/or placement or lack thereof.

e.  **CATEGORICAL ARCHITECTURAL BARRIERS -** Are elements and facilities which are, or can be architectural barriers standing alone or in combination with one another where the element(s)/facility(s) is/are noncomplying or where the combination thereof creates a category. For example:  such as a parking lot, entrance, restroom, lobby, guest room, dining area.

f.  **PHYSICAL FEATURES** - Are synonymous with "Elements."

g.  **FACILITY -** All or any portion of buildings, structures, site improvements, complexes, equipment, roads, walks, passageways, parking lots, or other real or personal property located on a site.

h.  **ENTRANCE -** Any access point to a building or portion of a building or facility used for the purpose of entering.  An entrance includes the approach walk, the vertical access leading to the entrance platform, the entrance platform itself, vestibules if provided, the entry door(s) or gate(s), and the hardware of the entry door(s) or gate(s).

i.  **CLEAR FLOOR SPACE -** The minimum unobstructed floor or ground space required to accommodate a single, stationary wheelchair and occupant.

j.  **ACCESSIBLE ROUTE -** A continuous unobstructed path connecting all accessible elements and spaces of a building or facility.  Interior accessible routes may include corridors, floors, ramps, elevators, lifts, and clear floor space at fixtures.  Exterior accessible routes may include parking access aisles, curb ramps, crosswalks at vehicular ways, walks, ramps, and lifts.

k.  **PATH OF TRAVEL -** A continuous path connecting all elements and spaces of a building or facility.

l.  **NON COMPLYING -** Not complying with ADAAG and/or the "Readily Achievable Standard" of 28 CFR §36.304.

**PRELIMINARY FACTUAL ALLEGATIONS:**

8.      The QUALITY INN & SUITES, is a hotel located at/near 871 S. Harbor Ave, Anaheim, California.  The QUALITY INN & SUITES, its signage, parking, registration office, lobby unisex restroom, pool area, guest room(s) and its other facilities are each a "place of public accommodation or facility" subject to the barrier removal requirements of the Americans with Disabilities Act.  On information and belief, each such facility has, since July 1, 1970, undergone "alterations, structural repairs and additions," each of which has subjected the QUALITY INN & SUITES, and each of its facilities, its signage, parking, registration office, lobby unisex restroom, pool area, guest room(s) to disability access requirements per the Americans with Disabilities Act Accessibility Guidelines (ADAAG), and the California Building Code.

9.      Defendant NARA INVESTMENTS LLC, a California Limited Liability Company is the owner(s) of the real property (land and building) located at or near 871 S. Harbor Ave, Anaheim, California.

10.     Defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company (hereinafter alternatively collectively referred to as "defendants") are the owners and operators, lessors and/or lessees, or agents of the owners, lessors and/or lessees, of the public accommodation known as QUALITY INN & SUITES, located at/near 871 S. Harbor Ave, Anaheim, California, or of the building and/or buildings which constitute said public accommodation.

11.     At all times relevant to this complaint, defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company, own and operate in joint venture the subject QUALITY INN & SUITES as a public accommodation.  This business is open to the general public and conducts business therein.  The business is a "public accommodation" or "public facility" subject to the requirements of California Civil Code §§51, 51.5 and 54, *et seq.,* Health and Safety code §19955, *et seq.,* and the ADA, 42 U.S.C. §12101, *et seq.*

12.     On or about the year 2000, defendants' and each of them purchased and/or took possessory control of the premises now known as  QUALITY INN & SUITES.  At all times prior thereto, defendants' and each of them were aware of their obligation prior to the close of escrow, or upon taking possessory interest that public accommodations had a duty to identify and remove architectural barriers and were aware that the Inn was not accessible to the disabled.  Nevertheless, defendants' and each of them, operated the Inn as though it was accessible.

13.     At all times relevant to this complaint, defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company are jointly and severally responsible to identify and remove architectural barriers at the subject QUALITY INN & SUITES pursuant to Code of Federal Regulations title 28, section 36.201(b), which states in pertinent part:

**§ 36.201     General**

(b)   *Landlord and tenant responsibilities.* Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.
28 CFR §36.201(b)

14.     At all times stated herein, defendants' and each of them with the knowledge that each of them had a continuing obligation to identify and remove architectural barriers where it was readily achievable to do so, failed to adopt a transition plan to provide better and/or compliant access to the subject accommodation.

15.     At all times referred to herein and continuing to the present time, defendants, and each of them, advertised, publicized and held out the QUALITY INN & SUITES as being handicapped accessible and handicapped usable.

16.     Plaintiff BYRON CHAPMAN was in the greater Los Angeles and Orange Counties areas, for the purposes of: business, entertainment, and visiting Disneyland.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

17.     On or about November 8, 2014 through November 10, 2014 and July 6, 2015 through July 9, 2015 plaintiff  BYRON CHAPMAN was an invitee and guest at the subject QUALITY INN & SUITES at times with Mr. Sandy Puleo as his guest during the November trip and his family, Julie Kilkenny, his daughter, and Blayne Kilkenny, his son-in-law, and their two sons during the July trip, for purposes of overnight stays.

18.     On or about November 8, 2014 through November 10, 2014 and July 6, 2015 through July 9, 2015, plaintiff BYRON CHAPMAN encountered the following architectural barriers: parking lot of QUALITY INN & SUITES and as a legal result had the following adverse experiences: there was three (3) parking spaces serving the lobby/registration office. None were handicapped accessible/resulting in Plaintiff taking up two spaces elsewhere and fearing his vehicle might be vandalized;  No van accessible parking serving rooms #103 and #104. The access aisles were only 5' wide/resulting in Plaintiff inability to deploy his ramp, exit and attempting to re-enter without fearing he would be blocked out. Plaintiff was compelled to take up two spaces and feared someone might vandalize his vehicle for so doing.

After sending notice letter(s) on November 18, 2014, and  December 4, 2014, to the landlord and/or tenant about access problems, plaintiff returned to the subject QUALITY INN & SUITES, for the purposes of participating in the goods and services provided and to see whether this public - accommodation had been made more accessible.  A quarter of a century has now passed since the Americans with Disabilities Act of 1990 ("ADA") took effect.

19.     On or about November 8, 2014 through November 10, 2014 and July 6, 2015 through July 9, 2015 plaintiff BYRON CHAPMAN  encountered the following architectural barriers in the lobby of the QUALITY INN & SUITES and as a legal result had the following adverse experiences: the lowered section of the regular counter was taken up with a computer and display screen and other materials/resulting in plaintiff having to reach over a high counter to get the paperwork to sign, credit card, etc. putting stress and strain on his upper extremities. This was frustrating and difficult.

//

//

20. On or about November 8, 2014 through November 10, 2014 and July 6, 2015 through July 9, 2015, plaintiff BYRON CHAPMAN encountered the following architectural barriers in room #104 at the QUALITY INN & SUITES and as a legal result had the following adverse experiences: (the room was designated handicapped accessible. It was not). Closet hangars at approximately 60"/causing him to stress and strain to reach; lavatory apron was too low and at approximately 23"/ therefore he could not get his wheelchair under it/resulting in sitting sideways stressing and straining to reach the controls/resulting in getting water, *etc.*, on the plaintiff's clothes, and it was hard to wash his face and shave, reach faucets to take a sponge bath was made difficult. The curtain rods were too short/ resulting in difficulty stretching to reach them; the HVAC controls were blocked by the table/ and plaintiff could not reach them; the room had a bathing tub with no bench (stationary fold downs), no grab bars, <u>no slide</u> adjusting hot/cold water controls/resulting in plaintiff being unable to shower. Plaintiff BYRON CHAPMAN was annoyed, frustrated and uncomfortable only being able to sponge bathe. The water closet had one short grab bar behind of and flush control on narrow side/resulting in plaintiff 'BYRON CHAPMAN stressing and straining his upper extremities to transfer and then twist to flush. Other elements that were too high or not placed properly were: safety latch/ lock, clothes pole, towel racks behind toilet.

21. The 2015 visit resulted in encountering the same architectural barriers and having the same adverse experiences with the exception there were longer curtain rods and the table was moved away from the HVAC controls.

22. Room #103 which was designated as a disability room was modified as of July 2015: it had longer curtain rods, access to HVAC controls, lower peep hole, lower security lock at door; apron at lavatory was cut out for frontal approach. Plaintiff was unaware that room #103 was also designated as handicapped accessible until checking out and being told by Ruby that rooms #103 and #104 were the accessible rooms.

//

//

//

1        23.    On or about November 8, 2014 through November 10, 2014,  plaintiff  BYRON

2  CHAPMAN encountered the following architectural barriers at the breakfast area of the

3  QUALITY INN & SUITES and as a legal result had the following adverse experiences: the

4  buffet counter had elements difficult to reach: juices in left corner, hot water and coffee, oat meal

5  dispenser/ resulting in plaintiff not being able to reach these elements. On plaintiff's second visit

6  in July of 2015 an employee assisted plaintiff in securing these items. While appreciated,

7  plaintiff BYRON CHAPMAN felt awkward being the only person amongst other guests who

8  was being served. Plaintiff  BYRON CHAPMAN prefers to have independent access to these

9  items.  24.    On or about November 8, 2014 through November 10, 2014 and July 6, 2015

10  through July 9, 2015, plaintiff BYRON CHAPMAN encountered the following architectural

11  barriers in the pool area of the QUALITY INN & SUITES and as a legal result had the following

12  adverse experiences: (November of  2014 was warm, July 2015 was hot). The latch to the gate

13  was too high and the pool did not have a lift/resulting in plaintiff  BYRON CHAPMAN not

14  being able to use the pool. Plaintiff  BYRON CHAPMAN was frustrated and disappointed.

15        25.    On or about November 18, 2014, plaintiff BYRON CHAPMAN wrote two (2)

16  letters - one to the landlord and the other to the tenant about access issues. Attached hereto as

17  **Exhibit "A"** is the November 18, 2014 letter that was sent by BYRON CHAPMAN. He wrote:

18        **November 18, 2014:**

19      "Recently I visited (Quality Inn & Suites Maingate) (871 S.
Harbor Blvd., Anaheim, CA). As a wheelchair user, I had

20  problems with your lobby counter because the lowered section
is taken up by a computer. The disabled parking by the office

21  did not have two 8' tall poles (one for each disabled parking
space and I was concerned someone would pull into one of

22  them and I would get blocked out of my vehicle or not be able
to park in the guests parking space that did not have a parking

23  sign. In fact while I was at your hotel a vehicle with no
Disabled License plate or Plaguered parked in the disability

24  space because the pole and disability parking space was
missing and I had difficulty parking in a single parking space.

25  I had the night lobby clerk (a man) come out and look at it!
there was no code enforcement sign which means, even if the

26  police were called out, they could not write a ticket or have the
vehicle removed. Also the breakfast room tables were not

27  accessible for my wheelchair, and I could not reach several
bowls on the counters because they were too high. The lobby

28  restroom also had some issues. The toilet seat paper towel

dispenser was too high to reach, the flush handle is on the narrow side of the toilet and the table facing toilet made it hard to maneuver my wheelchair.

As for the Disability room I stayed in I also had problems. For example, I couldn't reach the A/C - Heater controls because the table and chair was in the way, nor could I open or close the curtains because the handle rod was too short. For security, the peep hope was too high and the metal safety latch was too high to set. I had difficulty reaching the sink because the siding edge from the counter was too low and I couldn't get my legs under it to reach the faucets. I had to lean forward each time which was very difficult to do and uncomfortable. I could not take a shower because the only grab bar was on the back wall (right side of wall if facing the tub control, and there was no adjustable shower head and not a bench to sit on if using the tub,so I had to take sponge baths and the toilet/tub room did not have enough room for me and my wheelchair (I couldn't close that door). The towel rack was very difficult reach because it was too high, and the last item was no lowered clothes rod to hang up my shirts and things.

I thought Landlord and the Tenant should know about this, that's why I wrote this identical letter to both of you. It's like letting the right hand know what the left hand is doing! If you both put your heads and hands together, I know the two of you can fix the problems.

You need to learn what needs to be done and do it now. You need to do your own inspection. You don't need to take my word for it. So to help you, please call Pacific ADA center at 1-800-949-4232 and ask them to send you all the information they have on access for the Disabled. Then you will know what to look at and what needs to be done.

Much of the work can be done my a handyman. Start now with the real easy stuff. For example, go to the local hardware store and but 2 eight foot poles and another disability parking sign and put them in the grass in front of each parking space for disabled parking. Then lower the tall containers in the breakfast room so everyone can see what is in each container and grab it themselves. The lobby bathroom, relocate the toilet paper seat dispenser to a lower wall and remove the table or put in a smaller one. As for the Disability room toilet and tub area, install the proper grab bars and adjustable shower head and remove the lower front edge of the counter where the sink is located. These examples are all easy things to do which make a huge difference for the disabled especially wheelchair users. Also look in the $10,000 tax credit for providing access. Remember, wheelchair users have an old saying: "access delayed is access denied!" "You understand right?" Anyway, please write me back when you receive this letter, tell me exactly what will be done and when it will be done. Give me a date.

1
2
      If you are not the one in charge, or don't have the responsibility to do it, would you make sure this letter goes to the person in charge or who can make decisions on what to do.

3
      Thank you in advance for your cooperation."

4
5
6
7
26.    On or about November 24, 2014 a note was written to Plaintiff BYRON CHAPMAN by front office manager Penny Fleming (attached hereto as **Exhibit "B"**). She wrote:

**November 24, 2014:**

8
9
10
11
"I am in receipt of your letter. Thank you. I called you today to discuss, at the phone number in your reservation 430-XXX-XXXX, but it is not a working #. Can you call at 714-991-8100 to discuss, or you can email me your number to fom@anaheimqualityinn.com and I will call you back.

12
Warm regards and thank you again."

13
Penny Fleming,
Front Office Manager

14
15
16
17
18
19
20
27.    On or about December 2, 2014 Plaintiff BYRON CHAPMAN spoke with Penny Fleming by phone. In substance the conversation was: that corrections were being made at the QUALITY INN & SUITES - simpler ones being done first. The two disability rooms #103 and #104 would take 4 to 6 months to complete (that would be April or June 2015). BYRON CHAPMAN felt everything to provide access should be undertaken at the same time. He remarked the anniversary of the ADA would be July 25, 2015 or 25 years.

21
22
28.    On or about December 4, 2014 PLAINTIFF BYRON CHAPMAN continued his conversation with Penny Fleming.  He wrote:

23
**December 4, 2014:**

24
25
"Just a follow up note to recap our conversation when I called you on Tuesday,  December 2, 2014 regarding the Quality Inn & Suites at 871 S. Harbor Blvd. Anaheim, CA 92802.

26
27
28
You thanked me for my letter I sent to Quality Inn & Suites at 871 S. Harbor Blvd. Anaheim, CA. In that letter I mentioned several accessibility barriers that I encountered during my 3day stay at that property.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     The issue of how and when the corrections were going to be corrected. You also stated that the simpler and smaller items will be completed first (and you said several of these items have already been addressed or were scheduled to be completed in a short period of time, however, the two disability rooms (#103 and #104 ) would take four (4) to six (6) months to complete.

     After our phone conversation had ended, I had second thoughts regarding your order and time line for completion of all of the accessibility issues, interior lobby, restroom and breakfast areas and the exterior such as parking signage and such and then taking four to six months to complete the necessary corrections to make both disability rooms completion several months away.

     The reality is, all of the corrections need to be done together and at the same time. The reason is, you get the Lobby Breakfast room and exterior items taken care of and then start to work on the disability rooms last. It makes little sense to complete one section until after the other, i.e. the parking and lobby are accessible for the disabled but why park, check in if you do not have a Disability room available and vice versa.

     Just some of information; this upcoming July 26, 2015 will mark the 25th year since the Americans with Disabilities Act (ADA) has been or will be for 25 years.

     I look forward to staying at the Quality Inn & Suites at the Quality Inn & Suites at 871 S. Harbor Blvd. Anaheim during the month of April 2015."

    Attached hereto as **Exhibit C** is the December 4, 2014 letter BYRON CHAPMAN sent to Penny Fleming.

    29.   On or about August through October 2015, and thereafter, plaintiff would have returned to QUALITY INN & SUITES but was deterred from returning for the fear that once he returned, he would encounter all of the same architectural barriers as on the first visit and second visit.

//

//

//

//

//

1       30.    Therefore, at said time(s) and place, plaintiff BYRON CHAPMAN,  encountered

2   the following architectural barriers as stated herein or lack thereof and/or "elements" and

3   "facilities" which constituted architectural barriers and/or categorical architectural barriers and a

4   denial of the proper and legally required access to a public accommodation to persons with

5   physical disabilities including, but not limited to:

6

7       A.    lack of the requisite type and number of disabled parking stall(s);

8       B.    lack of disabled van accessible parking stall(s);

9       C.    lack of (proper) disabled parking signage;

10      D.    lack of tow-a-way signage;

11      E.    lack of handicapped accessible registration counter;

12      F.    lack of a handicapped-accessible lobby/breakfast room;

13      G.    lack of the requisite number of accessible guest rooms by classification;

14      H.    lack of an accessible swimming pool;

15      I.    lack of signage, policies, procedures and guidelines to ensure the person(s)
    with disabilities to the maximum extent possible have an opportunity to
16  share in the same goods, services and opportunities as those afforded to
    able-bodied persons;

17

18      J.    On personal knowledge, information and belief, other public facilities and
    elements too numerous to list were inaccessible to plaintiff(s) and for use
19  by other persons with physical disabilities similarly situated.

20      K    Plaintiff is informed and believes defendants lack a policy, practice and
    procedure of having available guest rooms for persons with disabilities.
21  (Plaintiff seeks the implementation of a policy, practice and procedure that
    handicapped accessible guest room(s) will not be sold unless specifically
22  requested or until all other rooms are sold to the general public to ensure
    the availability of guest rooms to persons with disabilities. That the person
23  making a reservation for a handicap accessible guestroom be provided
    with a confirmation that so states).
24

25

26  //

27  //

28  //

31.    Specific architectural barriers encountered by plaintiff BYRON CHAPMAN time(s) and place herein in addition to categorical architectural barriers stated herein and the respective difficulties experienced by plaintiff as stated herein, the barriers include but are not limited to:

### PARKING

•    not the requisite number and type of accessible parking stalls;

•    no van accessible parking stall(s) and access aisle(s) at the front lobby entrance;

•    no tow-a-way signage with phone number;

•    non complying van accessible parking stall access aisle(s) at those parking stalls serving room #103 and #104. Access aisles only 5' wide.

### LOBBY/ REGISTRATION

•    inaccessible service counter (lowered section obstructed by computer, screen, materials);

### LOBBY RESTROOM AND BREAKFAST AREA

•    noncomplying unisex restroom serving lobby/breakfast area: dispensers too high; flush on narrow side;

### POOL AREA

•    gate not accessible

•    no pool lift

### HOTELS/MOTELS

•    flush control of toilet on the narrow side between wall and toilet tank wrong side;

•    apron too low in room #104

•    clothes rods too high (at 5' in room  #104);

•    dispenser(s) located too high/not usable;

•    towel racks too high or not properly placed;

•    inaccessible buffet counter and placement of elements thereupon

1    •    inaccessible guest room(s) by classification; rooms #103 and #104;

2    •    noncomplying shower and elements within; no roll in shower or

3         complying bath tubs;

4    •    noncomplying peephole in guestroom #104.

5         Therefore, as a legal result of encountering each of said elements, plaintiff(s)

6    experienced one, all, or a combination of the following difficulties: stress, strain, difficulty, and

7    discomfort to his upper extremities in attempting to and/or using said elements also causing

8    anxiety, disappointment, and embarrassment.

9         32.    At all time(s) as stated herein, plaintiff BYRON CHAPMAN encountered

10   architectural barrier(s) as stated herein and/or had personal knowledge of said barrier(s) and

11   knew it would be a futile gesture to attempt to overcome it/them because of his disability.

12        33.    At all times stated herein, it was "readily achievable" for defendants to remove

13   some and/or all of the architectural barriers complained of over a reasonable period of time from

14   the date that defendants initially took possession to meet the affirmative duty to identify and

15   remove architectural barriers where it is readily achievable to do so.  In that regard, defendants

16   could have but did not avail themselves of the tax deduction and tax credits provided by  Internal

17   Revenue Services ("IRS") codes 44 and 190, which apply to the costs of barrier removal.

18        34.    At all time(s) and place, each architectural element as stated herein that did

19    not strictly comply with or substantially comply with the ADAAG minimum requirements

20   constituted an architectural barrier which precluded plaintiff BYRON CHAPMAN from full and

21   equal opportunities afforded to non disabled persons to the goods and services of QUALITY

22   INN & SUITES.

23        35.    Plaintiff BYRON CHAPMAN was and is deterred from returning to QUALITY

24   INN & SUITES so long as architectural barrier(s) complained of that he encountered, as stated

25   herein are not ADAAG compliant.

26        36.    At said time(s) and place, when plaintiff BYRON CHAPMAN encountered the

27   architectural barriers as stated herein, plaintiff BYRON CHAPMAN in seeing a barrier(s) and/or

28   attempting to overcome the barriers to gain access experienced any one or combination of

physical difficulty, discomfort, embarrassment, stress, strain, fatigue, anger, annoyance and disappointment.  This arose from plaintiff's physical inability to effectively use his upper extremities to easily overcome the architectural barriers as stated herein.  This constitutes a denial of full and equal access to the subject public accommodation and a denial of the opportunity to independently enjoy and participate in the opportunities, goods and services offered to non disabled persons and patrons, invitees and guests.

37.     Said architectural barrier(s) as stated herein deprived and deterred plaintiff BYRON CHAPMAN the same full and equal access that a non wheelchair user/non disabled person would enjoy while engaging in the goods, service and opportunities offered at the subject QUALITY INN & SUITES.

38.     At all times stated herein, the existence of architectural barriers at defendants' place of public accommodation evidenced "actual notice" of defendants' intent not to comply with the Americans with Disabilities Act of 1990 either then, now or in the future.

39.     As a legal result of defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company's failure to act as a reasonable and prudent public accommodation in identifying, removing or creating architectural barriers, policies, practices and procedures that denied access to plaintiff and other persons with disabilities, plaintiff suffered the damages as alleged herein.

40.     As a legal result of defendants' actions or omissions as stated herein and defendants' denial of access to plaintiff to all or part of the facilities constituting the public accommodations which comprise the QUALITY INN & SUITES, plaintiff was wrongfully evicted and/or rejected by defendants, and each of them.

41.     As a result of the denial of equal access to defendants' facilities due to the acts and omissions of defendants, and each of them, in owning, operating and maintaining these subject public facilities, plaintiff BYRON CHAPMAN suffered violations of plaintiff's civil rights, including, but not limited to rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq.*

1  And, plaintiff BYRON CHAPMAN suffered bodily injury at time(s) stated herein including, but

2  not limited to anyone of the following conditions and/or combination thereof: fatigue, stress,

3  strain and pain in wheeling and attempting to and/or transferring up, on, down, to, over, around

4  and through architectural barriers.

5        42.    Further, plaintiff BYRON CHAPMAN suffered emotional distress, mental

6  distress, mental suffering, mental anguish, which includes, but is not limited to, shame,

7  humiliation, embarrassment, upset, anger, frustration, disappointment and worry, expectedly and

8  naturally associated with a person with physical disabilities encountering architectural barrier(s)

9  as stated herein and being denied access, all to his damages as prayed hereinafter in an amount

10  within the jurisdiction of this court.  No claim is being made for mental and emotional distress

11  over and above that is usually associated with the encountering of architectural barriers and

12  legally resulting in adverse experiences.  No expert testimony regarding this usual mental and

13  emotional distress will be presented at trial in support of the claim for damages.

14        43.    Defendants', and each of their, failure to remove the architectural barriers

15  complained of herein created, at the time of plaintiff BYRON CHAPMAN's first visit to said

16  public accommodation, and continues to create continuous and repeated exposure to substantially

17  the same general harmful conditions which caused plaintiff BYRON CHAPMAN harm as stated

18  herein.

19        44.    Plaintiff BYRON CHAPMAN was denied his rights to equal access to a public

20  facility by defendants  NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN &

21  SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company because

22  defendants maintained an Inn without access for persons with physical disabilities to its facilities,

23  including but not limited to the signage, parking, registration office, lobby unisex restroom, pool

24  area, guest room(s) and continue to the date of filing this complaint to deny equal access to

25  plaintiff and other persons with physical disabilities in these and other ways.

26        45.    Construction alterations, if any, carried out by defendants have also triggered

27  access requirements under both California law and the Americans with Disabilities Act of 1990.

28

46.     Defendants may have intentionally undertaken to modify and alter existing building(s), and may have failed to make them comply with accessibility requirements under the requirements of ADAAG and California Building Code.

47.     Defendants have been negligent in their affirmative duty to identify the architectural barriers complained of herein and negligent in the removal of some or all of said barriers.

48..    Because of defendants' violations, plaintiff and other persons with physical disabilities are unable to use public facilities such as those owned and operated by defendants on a "full and equal" basis unless such facility is in compliance with the provisions of the Americans with Disabilities Act of 1990, Civil Code §51, Civil Code §54.1 and Health & Safety Code §19955, *et seq.* and other accessibility law as pled herein.  Plaintiff seeks an order from this court compelling defendants to make the QUALITY INN & SUITES accessible to persons with disabilities.

49.     Plaintiff, as described hereinbelow, seeks injunctive relief to require the QUALITY INN & SUITES to be made accessible to meet the requirements of both California law and the Americans with Disabilities Act of 1990, whichever is more restrictive, so long as defendants operate the QUALITY INN & SUITES as a public facility.

50.     Plaintiff(s) believes that even with service of the summons and complaint on defendant(s) and each of them, that defendant(s) will not , under their "continuing obligation" immediately undertake remedial action to identify and remove architectural barriers.

51.     Plaintiff seeks damages for violation of his civil rights on November 8, 9, 10, 2014; July 7, 8, 9, 2015, and **deterrence occasion(s)** and seeks statutory damages of not less than $4,000, pursuant to Civil Code §52(a) or alternatively $1000 pursuant to Civil Code §54.3, for each day after his/her visit that the trier of fact (court/jury) determines was the date that some or all remedial work should have been completed under the standard that the landlord and tenant had an ongoing duty to identify and remove architectural barriers where it was readily achievable to do so, which deterred plaintiff  BYRON CHAPMAN from returning to the subject public accommodation because of his/her knowledge and/or belief that neither some or all architectural

1  barriers had been removed and that said premises remains inaccessible to persons with disabilities

2  whether a wheelchair user or otherwise.  The acts and omission of defendants, and each of them,

3  in failing to provide the required accessible public facilities at the time of plaintiff's visit and

4  injuries, indicate actual and implied malice toward plaintiff, and despicable conduct carried out

5  by defendants, and each of them, with a willful and conscious disregard for the rights and safety

6  of plaintiff and other similarly situated persons, and justify a trebling of damages as provided by

7  Civil Code §§52(a) and 54.3, in order to make a more profound example of defendants, and each

8  of them, to other operators and landlords of other Inns, Hotels, and Motels, and other public

9  facilities, and to punish defendants and to carry out the purposes of  the Civil Code §§ 51, 51.5

10  and 54.

11          52.     At all times stated herein and for post complaint occasions, plaintiff has an

12   absolute unfettered civil right to return to the public accommodation(s) complained of within

13  thirty (30) day intervals until defendants remove all architectural barriers under their continuing

14  obligation to identify and remove architectural barriers.

15          53.     Plaintiff is informed and believes and therefore alleges that defendants NARA

16  INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA

17  INVESTMENTS LLC, a California Limited Liability Company, and each of them, caused the

18  subject building(s) which constitute the QUALITY INN & SUITES to be constructed, altered and

19  maintained in such a manner that persons with physical disabilities were denied full and equal

20  access to, within and throughout said building(s) of the QUALITY INN & SUITES and were

21  denied full and equal use of said public facilities.  Furthermore, on information and belief,

22  defendants have continued to maintain and operate said the Inn and/or its building(s) in such

23  conditions up to the present time, despite actual and constructive notice to such defendants that

24  the configuration of QUALITY INN & SUITES and/or its building(s) is in violation of the civil

25  rights of persons with physical disabilities, such as plaintiff BYRON CHAPMAN, and other

26  members of the disability community.  Such construction, modification, ownership, operation,

27  maintenance and practices of such public facilities are in violation of Civil Code §§51, 51.5 and

28  54, Health and Safety Code §19955, and the ADA, 42 U.S.C. §12101, *et seq.*

54.     Defendants' actual and constructive notice that the physical configuration of the facilities including, but not limited to, architectural barriers constituting the QUALITY INN & SUITES and/or building(s) was in violation of the civil rights of persons with physical disabilities, such as plaintiff, includes, but is not limited to, coming into contact with public accommodations with accessible elements and facilities since January 26, 1991, communications with invitees and guests, plaintiff BYRON CHAPMAN himself,  possibly sponsors of conferences, owners of other restaurants, hotels, motels, and businesses, notices they obtained from governmental agencies upon modification, improvement, or substantial repair of the subject premises and other properties owned by these defendants, newspaper articles and trade publications regarding the Americans with Disabilities Act of 1990 and other access laws, public service announcements by former U.S. Attorney General Janet Reno between 1993 and 2000, and other similar information.  Defendants' failure, under state and federal law, to make the QUALITY INN & SUITES  accessible is further evidence of defendants' conscious disregard for the rights of plaintiff and other similarly situated persons with disabilities.  Despite being informed of such effect on plaintiff and other persons with physical disabilities due to the lack of accessible facilities, defendants, and each of them, knowingly and willfully refused to take any steps to rectify the situation and to provide full and equal access for plaintiff and other persons with physical disabilities to the Inn.  Said defendants, and each of them, have continued such practices, in conscious disregard for the rights of plaintiff and other persons with physical disabilities, up to the date of filing of this complaint, and continuing thereon.  Defendants had further actual knowledge of the architectural barriers referred to herein by virtue of the demand letter addressed to the defendants and served concurrently with the summons and complaint.  Said conduct, with knowledge of the effect it was and is having on plaintiff and other persons with physical disabilities, constitutes despicable conduct in conscious disregard of the rights and safety of plaintiff and of other similarly situated persons, justifying the imposition of treble damages per Civil Code §§52 and 54.3.

//

//

55.     Plaintiff BYRON CHAPMAN and the disability community, consisting of persons with disabilities, would, could and will return to the subject public accommodation when it is made accessible to persons with disabilities.

**I.      FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §12101, *et seq.*)**
(On behalf of Plaintiff BYRON CHAPMAN, and against Defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company, inclusive)
(42 U.S.C. §12101, *et seq.*)

56.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 55 of this complaint.

57.     Pursuant to law, in 1990, the United States Congress made findings per 42 U.S.C. §12101 regarding persons with physical disabilities, finding that laws were needed to more fully protect:

> some 43 million Americans with one or more physical or mental disabilities; [that] historically society has tended to isolate and segregate individuals with disabilities; [that] such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; [that] the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; [and that] the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous.

58.     Congress stated as its purpose in passing the Americans with Disabilities Act of 1990 (42 U.S.C. §12102):

> It is the purpose of this act (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and (4) to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities.

//

59.     As part of the Americans with Disabilities Act of 1990, Public Law 101-336 (hereinafter the "ADA"), Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (Section 301 42 U.S.C. §12181, *et seq.*).  Among the public accommodations identified for purposes of this title was:

> (7)     PUBLIC ACCOMMODATION - The following private entities are considered public accommodations for purposes of this title, if the operations of such entities affect commerce -
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> 42 U.S.C. §12181(7)(A)

60.     Pursuant to §302, 42 U.S.C. §12182, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation."

61.     The specific prohibitions against discrimination set forth in §302(b)(2)(a), 42 U.S.C. §12182(b)(2)(a) are:

> (I)     the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;
>
> (ii)     a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;
>
> (iii)     a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility,

privilege, advantage, or accommodation being offered or would result in an undue burden;

(iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable; and

(v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

The acts of defendants set forth herein were a violation of plaintiff's rights under the ADA, Public Law 101-336, and the regulations promulgated thereunder, 28 CFR Part 36, *et seq.* - Effective January 31, 1993, the standards of the ADA were also incorporated into California Civil Code §51, making available the damage remedies incorporated into Civil Code §51 and 52(a) and 54.3.

62. The removal of the barriers complained of by plaintiff as hereinabove alleged were at all times after January 26, 1992 "readily achievable" as to the subject building(s) of QUALITY INN & SUITES pursuant to 42 U.S.C. §12182 (b)(2)(A)(i)-(iv). On information and belief, if the removal of all the barriers complained of herein together was not "readily achievable," the removal of each individual barrier complained of herein was "readily achievable." On information and belief, defendants' failure to remove said barriers was likewise due to discriminatory practices, procedures and eligibility criteria, as defined by 42 U.S.C. §12182 (b)(2)(A)(i)and (ii).

63. Per 42 U.S.C. §12181 (9), the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." The statute defines relative "expense" in part in relation to the total financial resources of the entities involved. Plaintiff alleges that properly repairing, modifying, or altering each of the items that plaintiff complains of herein were and are "readily achievable" by the defendants under the standards set forth under §301(9) of the Americans with Disabilities Act. Furthermore, if it was not "readily achievable" for defendants to remove each of such barriers, defendants have failed to make the required services available through alternative methods which were readily achievable.

//

64.     On information and belief, construction work on, and modifications of, the subject building(s) of QUALITY INN & SUITES occurred after the compliance date for the Americans with Disabilities Act, January 26, 1992, independently triggering access requirements under Title III of the ADA.

65.     Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12188, *et seq.*, plaintiff is entitled to the remedies and procedures set forth in §204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as plaintiff is being subjected to discrimination on the basis of disability in violation of this title or have reasonable grounds for believing that plaintiff is about to be subjected to discrimination in violation of §302.  Plaintiff is deterred from returning to or making use of the public facilities complained of herein so long as the premises and defendants' policies bar full and equal use by persons with physical disabilities.

66.     42 U.S.C. 12188 (a)(1) states: "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions."  Pursuant to this section, plaintiff BYRON CHAPMAN has not returned to defendants' premises since on or about July 9, 2015, but on information and belief, alleges that defendants have continued to violate the law and deny the rights of plaintiff and of other persons with physical disabilities to access this public accommodation.  Pursuant to 42 USC §12188(a)(2), "In cases of violations of §302(b)(2)(A)(iv) . . . injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title."

67.     Plaintiff seeks relief pursuant to remedies set forth in §204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to federal regulations adopted to implement the Americans with Disabilities Act of 1990, including but not limited to an order granting injunctive relief and attorneys' fees.  Plaintiff will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

**II.    SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF CALIFORNIA CIVIL CODE §§54, 54.1 AND 54.3, ET SEQ.**
(On behalf of Plaintiff BYRON CHAPMAN, and against Defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company, inclusive)

(California Civil Code §§54, 54.1, 54.3, *et seq.*)

68.    Plaintiff repleads and incorporates by reference as if fully set forth again herein, the allegations contained in paragraphs 1 through 67 of this complaint.

69.    At all times relevant to this action, California Civil Code §54 has provided that persons with physical disabilities are not to be discriminated against because of physical handicap or disability.  This section provides that:

> (a) Individuals with disabilities . . . have the same rights as the general public to full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, and other public places.

70.    California Civil Code §54.1 provides that persons with disabilities shall not be denied full and equal access to places of public accommodation or facilities:

> (a)(1) Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

Civil Code §54.1(a)(1)

71.    California Civil Code §54.1 further provides that a violation of the Americans with Disabilities Act of 1990 constitutes a violation of section 54.1:

> (d) A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section, and nothing in this section shall be construed to limit the access of any person in violation of that act.

Civil Code §54.1(d)

72.     Plaintiff BYRON CHAPMAN is a person within the meaning of Civil Code §54.1 whose rights have been infringed upon and violated by the defendants, and each of them, as prescribed by Civil Code §§54 and 54.1.  Each specific architectural barrier which defendants knowingly and willfully fail and refuse to remove constitutes a separate act in violation of Civil Code §§54 and 54.1.  Plaintiff has been and continue to be denied full and equal access to defendants' QUALITY INN & SUITES.

As a legal result, plaintiff is entitled to seek damages pursuant to a court or jury determination, in accordance with California Civil Code §54.3(a) for each day on which he visited or have been deterred from visiting the QUALITY INN & SUITES because of his knowledge and belief that the NARA QUALITY INN & SUITES is inaccessible to persons with disabilities.

California Civil Code §54.3(a) provides:

> Any person or persons, firm or corporation, who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than . . .one thousand dollars ($1,000) and . . . attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1 and 54.2.

Civil Code §54.3(a)

73.     On or about  November 8, 2014 through November 10, 2014 and July 6, 2015 through July 9, 2015, and **deterrence occasion(s)** plaintiff BYRON CHAPMAN suffered violations of Civil Code §§54 and 54.1 in that plaintiff BYRON CHAPMAN was denied access to signage, parking, registration office, lobby unisex restroom, pool area, guest room(s) and other public facilities as stated herein at the QUALITY INN & SUITES and on the basis that plaintiff BYRON CHAPMAN was a person with physical disabilities.

//

//

//

74.     As a result of the denial of equal access to defendants' facilities due to the acts and omissions of defendants, and each of them, in owning, operating and maintaining these subject public facilities, plaintiff BYRON CHAPMAN  suffered violations of plaintiff's civil rights, including, but not limited to rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq.* And, plaintiff BYRON CHAPMAN suffered bodily injury at time(s) stated herein, including, but not limited to anyone of the following conditions and/or combination thereof: fatigue, stress, strain and pain in wheeling and attempting to and/or transferring up, on, down, to, over, around and through architectural barriers. Specifically, as a legal result of defendants negligence in the design, construction and maintenance of the existing QUALITY INN & SUITES plaintiff suffered continuous, repetitive and cumulative trauma to his upper extremities while attempting to and/or transferring up, on, down, to, over, around and through architectural barriers.

75.  Further, plaintiff BYRON CHAPMAN suffered emotional distress, mental distress, mental suffering, mental anguish, which includes, but is not limited to, shame, humiliation, embarrassment, upset, anger, frustration, disappointment and worry, expected and naturally associated with a person with physical disabilities encountering architectural barrier(s) as stated herein and being denied access, all to his/her damages as prayed hereinafter in an amount within the jurisdiction of this court.  No claim is being made for mental and emotional distress over and above that is usually associated with the encountering of architectural barriers and legally resulting in adverse experiences.  No expert testimony regarding this usual mental and emotional distress will be presented at trial in support of the claim for damages.

76.     Plaintiff has been damaged by defendants', and each of their, wrongful conduct and seeks the relief that is afforded by Civil Code §§54 and 54.1, 54.3 for violation of plaintiff's rights as a person or an entity that represents persons with physical disabilities on or about November 8, 2014 through November 10, 2014 and July 6, 2015 through July 9, 2015, and **deterrence occasion(s)**, and on a continuing basis since then, including statutory damages, a trebling of all of actual damages, general and special damages available pursuant to §54.3 of the Civil Code according to proof.

//

77.     As a result of defendants', and each of their, acts and omissions in this regard, plaintiff has been required to incur legal expenses and hire attorneys in order to enforce plaintiff's rights and enforce the provisions of the law protecting access for persons with physical disabilities and prohibiting discrimination against persons with physical disabilities.  Pursuant to the provisions of Civil Code §54.3, plaintiff therefore will seek recovery in this lawsuit for all reasonable attorneys' fees and costs incurred if deemed the prevailing party.  Additionally, plaintiff's lawsuit is intended not only to obtain compensation for damages to plaintiff, but also to compel the defendants to make their facilities accessible to all members of the public with disabilities, justifying public interest attorneys' fees, if deemed the prevailing party, pursuant to the provisions of §1021.5 of the Code of Civil Procedure.

## III.   THIRD CAUSE OF ACTION FOR DENIAL OF ACCESSIBLE SANITARY FACILITIES IN VIOLATION OF HEALTH & SAFETY CODE §19955, *ET. SEQ.*

(On behalf of Plaintiff BYRON CHAPMAN, and Against Defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company, inclusive)

(Health & Safety Code §19955, *et seq.*)

78.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 77 of this complaint.

79.     Health & Safety Code §19955 provides in pertinent part:

The purpose of this part is to insure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of Chapter 7 (commencing with Sec. 4450) of Division 5 of Title 1 of the Government Code.  For the purposes of this part "public accommodation or facilities" means a building, structure, facility, complex, or improved area which is used by the general public and shall include auditoriums, hospitals, theaters, restaurants, hotels, motels, stadiums, and convention centers.  When sanitary facilities are made available for the public, clients or employees in such accommodations or facilities, they shall be made available for the handicapped.

//

//

//

//

//

80.     Health & Safety Code §19956, which appears in the same chapter as §19955, provides in pertinent part, "accommodations constructed in this state shall conform to the provisions of Chapter 7 (commencing with Sec. 4450) of Division 5 of Title 1 of the Government Code . . . ."  Health & Safety Code §19956 was operative July 1, 1970, and is applicable to all public accommodations constructed or altered after that date.  On information and belief, portions of the QUALITY INN & SUITES, and/or of the building(s) were constructed and/or altered after July 1, 1970, and substantial portions of the QUALITY INN & SUITES and/or the building(s) had alterations, structural repairs, and/or additions made to such public accommodations after July 1, 1970, thereby requiring said QUALITY INN & SUITES and/or building to be subject to the requirements of Part 5.5, §19955, *et seq.*, of the Health & Safety Code upon such alteration, structural repairs or additions per Health & Safety Code §19959.

81.     Pursuant to the authority delegated by Government Code §4450, *et seq*, the State Architect promulgated regulations for the enforcement of these provisions.  Effective July 1, 1982, Title 24 of the California Building Standards Code adopted the California State Architect's Regulations and these regulations must be complied with as to any alterations and/or modifications of QUALITY INN & SUITES and/or the building(s) occurring after that date.  Construction changes occurring prior to this date but after July 1, 1970 triggered access requirements pursuant to the "ASA" requirements, the American Standards Association Specifications, A117.1-1961.  On information and belief, at the time of the construction and modification of said building, all buildings and facilities covered were required to conform to each of the standards and specifications described in the American Standards Association Specifications and/or those contained in the California Building Code.

82.     Public hotels such as the QUALITY INN & SUITES are "public accommodations or facilities" within the meaning of Health & Safety Code §19955, *et seq*.

//
//
//
//

83.     As a result of the actions and failure to act of defendants, and as a result of the failure to provide proper and legally handicapped-accessible public facilities, plaintiff was denied plaintiff's rights to full and equal access to public facilities and suffered a loss of plaintiff's civil rights and plaintiff's rights as a person with physical disabilities to full and equal access to public facilities.

84.     Attorneys' Fees -- As a result of defendants' acts and omissions in this regard, plaintiff has been required to incur legal expenses and hire attorneys in order to enforce plaintiff's civil rights and enforce provisions of the law protecting access for the persons with physical disabilities and prohibiting discrimination against the persons with physical disabilities, and to take such action both in plaintiff's own interests and in order to enforce an important right affecting the public interest.  Plaintiff, therefore, seeks in this lawsuit the recovery of all reasonable attorneys' fees incurred, pursuant to the provisions of the Code of Civil Procedure §1021.5.  Plaintiff additionally seeks attorneys' fees pursuant to Health & Safety Code §19953 and Civil Code §§54.3 and/or in the alternative, plaintiff will seek attorneys' fees, costs and litigation expenses pursuant to §204(a) of the Civil Rights Act of 1964 (42 U.S.C. 200(a)-3(a)).  Plaintiff will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

85.     Plaintiff seeks injunctive relief for an order compelling defendants, and each of them, to make the subject place of public accommodation readily accessible to and usable by persons with disabilities.

**IV.   FOURTH CAUSE OF ACTION FOR DENIAL OF ACCESS TO FULL AND EQUAL ACCOMMODATIONS, ADVANTAGES, FACILITIES, PRIVILEGES AND/OR SERVICES IN VIOLATION OF CALIFORNIA CIVIL CODE §51, *ET SEQ.* (THE UNRUH CIVIL RIGHTS ACT)**
(On behalf of Plaintiff BYRON CHAPMAN, and Against Defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company, inclusive)

(Civil Code §51, 51.5)

86.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 85 of this complaint.

//

//

87.     Defendants' actions and omissions and failure to act as a reasonable and prudent public accommodation in identifying, removing and/or creating architectural barriers, policies, practices and/or procedures violates §51 of the Civil Code, the Unruh Civil Rights Act.  The Unruh Act provides:

> This section shall be known, and may be cited, as the Unruh Civil Rights Act.

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or **disability** are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

> This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or **disability.**

> Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure . . . nor shall anything in this section be construed to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other . . . laws.

> A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section.

As the Unruh Act incorporates violations of the Americans with Disabilities Act of 1990, the "intent" of the defendants in not complying with barrier removal is not an issue.  Hence, the failure on the parts of defendants, as reasonable and prudent public accommodations, in acting or failing to act to identify and remove barriers can be construed as a "negligent per se" act of defendants, and each of them.

88.     The acts and omissions of defendants stated herein are discriminatory in nature and in violation of Civil Code §51.5:

> No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed,

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

religion, color, national origin, sex, or **disability** of the person or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers.

      As used in this section, "person" includes any person, firm association, organization, partnership, business trust, corporation, limited liability company, or company.

      Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure . . . nor shall anything in this section be construed to augment, restrict or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

89.    Defendants' acts and omissions as specified have denied to the plaintiff full and equal accommodations, advantages, facilities, privileges and services in a business establishment, on the basis of physical disability, in violation of Civil Code §§51 and 51.5, the Unruh Civil Rights Act.  Furthermore, pursuant to the 1992 amendment to California Civil Code §51, "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."  Plaintiff accordingly incorporates the entirety of his above cause of action for violation of the Americans with Disabilities Act at ¶56, *et seq.*, as if repled herein.

90.    As a result of the denial of equal access to defendants' facilities due to the acts and omissions of defendants, and each of them, in owning, operating and maintaining these subject public facilities, plaintiff  BYRON CHAPMAN suffered violations of plaintiff's civil rights, including, but not limited to rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq.*  And, plaintiff BYRON CHAPMAN suffered bodily injury at time(s) stated herein, including, but not limited to anyone of the following conditions and/or combination thereof: fatigue, stress, strain and pain in wheeling and attempting to and/or transferring up, on, down, to, over, around and through architectural barriers. Specifically, as a legal result of defendants negligence in the design, construction and maintenance of the existing architectural barriers, plaintiff suffered

1  continuous, repetitive and cumulative trauma to his upper extremities while attempting to and/or

2  transferring up, on, down, to, over, around and through architectural barriers.

3       91.    Further, plaintiff BYRON CHAPMAN suffered emotional distress, mental

4  distress, mental suffering, mental anguish, which includes, but is not limited to, shame,

5  humiliation, embarrassment, upset, anger, frustration, disappointment and worry, expectedly and

6  naturally associated with a person with physical disabilities encountering architectural barrier(s)

7  as stated herein and being denied access, all to his damages as prayed hereinafter in an amount

8  within the jurisdiction of this court. No claim is being made for mental and emotional distress

9  over and above that is usually associated with the encountering of architectural barriers and

10 legally resulting in adverse experiences.  No expert testimony regarding this usual mental and

11 emotional distress will be presented at trial in support of the claim for damages.

12      92.    Plaintiff BYRON CHAPMAN is entitled to the rights and remedies of

13 §52(a) of the Civil Code, including trebling of actual damages (defined by §52(h) of the Civil

14 Code to mean "special and general damages"), as well as to reasonable attorneys' fees and costs,

15 as is allowed by statute, according to proof if deemed to be the prevailing party.

16 **PRAYER:**

17      Plaintiff prays that this court award damages and provide relief as follows:

18 **I.  PRAYER FOR FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A
     PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH
19   DISABILITIES ACT OF 1990 (42 U.S.C. §1 2101, *et seq.*)**
     (On behalf of Plaintiff BYRON CHAPMAN, and Against Defendants NARA
20   INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA
     INVESTMENTS LLC, a California Limited Liability Company, inclusive)

21
22      (42 U.S.C. §12101, *et seq.*)

23 //

24 //

25 //

26 //

27 //

28 //

1.      For injunctive relief, compelling defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company, inclusive, to make the  QUALITY INN & SUITES, located at 871 S. Harbor Ave, Anaheim, California, readily accessible to and usable by individuals with disabilities, per 42 U.S.C §12181, *et seq*., and to make reasonable modifications in policies, practice, eligibility criteria and procedures so as to afford full access to the goods, services, facilities, privileges, advantages and accommodations being offered;

2.      For attorneys' fees, litigation expenses and costs of suit, if plaintiff is deemed the prevailing party; and

3.      For such other and further relief as the court may deem proper.

**II.      PRAYER FOR SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF CALIFORNIA CIVIL CODE §§54, 54.1 AND 54.3, *ET SEQ*.**
(On behalf of Plaintiff BYRON CHAPMAN, and Against Defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company, inclusive)

(California Civil Code §§54, 54.1, 54.3, *et seq.*)

1.      For injunctive relief, compelling defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company, inclusive, to make the QUALITY INN & SUITES, located at 871 S. Harbor Ave, Anaheim, California, readily accessible to and usable by individuals with disabilities, per state law.

2.      Statutory damages as afforded by Civil Code §54.3 for the date of incident and for each occasion on which plaintiff was deterred from returning to the subject public accommodation;

3.      Attorneys' fees pursuant to Civil Code §54.3 and Code of Civil Procedure §1021.5, if plaintiffs are deemed the prevailing party;

4.      Treble damages pursuant to Civil Code §54.3;

5.      General damages according to proof;

6.      For all costs of suit;

7.    Prejudgment interest pursuant to Civil Code §3291; and

8.    Such other and further relief as the court may deem just and proper.

**III.   PRAYER FOR THIRD CAUSE OF ACTION FOR DENIAL OF ACCESSIBLE SANITARY FACILITIES IN VIOLATION OF HEALTH & SAFETY CODE §19955, *ET. SEQ.***
(On behalf of Plaintiff BYRON CHAPMAN, and Against Defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company, inclusive)

(Health & Safety code §19955, *et seq.*)

1.    For injunctive relief, compelling defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company, inclusive, to make the QUALITY INN & SUITES, located at 871 S. Harbor Ave, Anaheim, California, readily accessible to and usable by individuals with disabilities, per state law;

2.    For attorneys' fees pursuant to Code of Civil Procedure §1021.5, and/or, alternatively, Health & Safety Code §19953, if plaintiff is deemed the prevailing party;

3.    For all costs of suit;

4.    For prejudgment interest pursuant to Civil Code §3291;

5.    Such other and further relief as the court may deem just and proper.

**IV.   PRAYER FOR FOURTH CAUSE OF ACTION FOR DENIAL OF ACCESS TO FULL AND EQUAL ACCOMMODATIONS, ADVANTAGES, FACILITIES, PRIVILEGES AND/OR SERVICES IN VIOLATION OF CALIFORNIA CIVIL CODE §51, *ET SEQ.* (THE UNRUH CIVIL RIGHTS ACT)**
(On behalf of Plaintiff BYRON CHAPMAN, and Against Defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company, inclusive)
(California Civil Code §§51, 51.5, *et seq.*)

1.    For injunctive relief, compelling defendants NARA INVESTMENTS, INC. a California Corp. dba QUALITY INN & SUITES; and NARA INVESTMENTS LLC, a California Limited Liability Company,, inclusive, to make the QUALITY INN & SUITES, located at 871 S. Harbor Ave, Anaheim, California, readily accessible to and usable by individuals with disabilities, per state law;

1      2.     All statutory damages as afforded by Civil Code §52(a) for the date of incident and

2 for each occasion on which plaintiff was deterred from returning to the subject public

3 accommodation;

4      3.     Attorneys' fees pursuant to Civil Code §52(a), if plaintiff is deemed the prevailing

5 party;

6      4.     General damages according to proof;

7      5.     Treble damages pursuant to Civil Code §52(a);

8      6.     For all costs of suit;

9      7.     Prejudgment interest pursuant to Civil Code §3291; and

10     8.     Such other and further relief as the court may deem just and proper.

12 Dated: December 30, 2015          THOMAS E. FRANKOVICH,
                         *A PROFESSIONAL LAW CORPORATION*

By: _____
                         Thomas E. Frankovich
                         Attorney for Plaintiff BYRON CHAPMAN

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all claims for which a jury is permitted.

Dated: December 30, 2015          THOMAS E. FRANKOVICH,
                         *A PROFESSIONAL LAW CORPORATION*

By: _____
                         Thomas E. Frankovich
                         Attorney for Plaintiff BYRON CHAPMAN